UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
-------------------------------x

XAND CORPORATION,

                      Plaintiff,        NOTICE OF REMOVAL

    -against-
                                  **08 CIV. 0513**

STRATEGIC ENERGY, LLC,
                                  **JUDGE ROBINSON**

                      Defendant.
-------------------------------x

To the Honorable Judges of the United States District Court for the Southern District of New York:

The removing party, Strategic Energy L.L.C., by the undersigned attorney, respectfully shows this Court:

1. The removing party is the defendant in the above-entitled action.

2. On December 21, 2007, the above-entitled action was commenced against the removing party in the Supreme Court of the State of New York, County of Westchester, and is pending in that court, Index Number 25791/2007.

3. On December 21, 2007, the removing party was purportedly served with a summons and complaint at 150 E. 52nd Street, New York, New York, in the County of New York, State of New York. The removing party contends that service was not proper. This notice is filed within thirty days after such service.

4. The amount in controversy, exclusive of costs and interest, exceeds $75,000.00.

5. The plaintiff is a corporation duly organized and existing under the laws of the State of New York with its principal office and place of business at 11 Skyline Drive, Hawthorne, County of Westchester, State of New York. The defendant, Strategic Energy, L.L.C. is incorporated under the laws of the State of Delaware and maintains its principal place of business in Pittsburgh, Pennsylvania.

6. The defendant brings this action pursuant to the diversity jurisdiction of this court and the court has jurisdiction pursuant to 28 U.S.C. §1332. All claims arise from a contract negotiated at arm's length between the parties. It is alleged by the plaintiff that the defendant breached the contract.

7. This court has original jurisdiction of the above-entitled action pursuant to 28 U.S.C. §1332 and as the defendant Strategic Energy, L.L.C., is not a citizen or resident of the State of New York, wherein the above-entitled action is pending, removal of the action to this court is proper pursuant to 28 U.S.C. §1441(a).

8. A copy of all the Summons and Complaint in the above-entitled action is annexed as Exhibit A. An Answer has not yet been interposed.

WHEREFORE, the removing party prays that the above-entitled action be removed from the Supreme Court of the State of New York, County of Westchester to this court.

_____
Robert M. Lefland

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - x

XAND CORPORATION,

                Plaintiff,        NOTICE OF FILING OF
                                         NOTICE OF REMOVAL

    -against-

STRATEGIC ENERGY, LLC

                Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - x

      Pursuant to 28 U.S.C. §1446(d), the defendant Strategic Energy, L.L.C. gives notice to the Supreme Court of the State of New York, County of Westchester, and to Arthur Morrison, at his offices at 11 Skyline Drive, Hawthorne, New York 10532, counsel for the plaintiff, Xand Corporation, that the defendant has filed a notice of removal, removing the above-captioned action to the United States District Court for the Southern District of New York. A copy of the notice of removal is attached to this notice.

                                                          Robert M. Lefland
                                                          6057

Dated: White Plains, New York
       January 18, 2007

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

XAND CORPORATION,

                Plaintiff,                AFFIDAVIT OF SERVICE

    -against-

STRATEGIC ENERGY, LLC,

                Defendant.
------------------------------x

STATE OF NEW YORK    )
COUNTY OF WESTCHESTER  )

    I, Robert M. Lefland, being first duly sworn, depose and say that I am the attorney for Strategic Energy, L.L.C., the removing party herein and defendant in the above-entitled action; that on January 18, 2008, I filed with the Clerk of the Supreme Court, Westchester County, a copy of defendant's Notice of Removal and Notice of Filing of Notice of Removal in the above-entitled action to the United States District Court for the Southern District of New York, together with copies of the original summons and complaint, index number 25791/2007, by depositing such copies with the Clerk of the Court, in the Clerk's Office for the Supreme Court, Westchester County at 111 Dr. Martin Luther King, Jr. Boulevard, White Plains, New York 10601.

Sworn to before me this
18th day of January, 2008

_____                _____
BINH CAM NGHE                                            Robert M. Lefland
Notary Public, State of New York
No. 01NG6048200
Qualified in Westchester County
Commission Expires September 18, 2010

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
-----------------------------------------------------------------x

XAND CORPORATION

    Date Summons Filed
    Plaintiff Designates
    Westchester County as the
    Place of Trial

        Plaintiff,

    **SUMMONS**

- Against -

    Index No. 25791/2007
    Defendant's Residence
STRATEGIC ENERGY, L.L.C.
    Address: 150 E.52 St. NYC
    15th Floor Tel 212-752-6643

        Defendant
-----------------------------------------------------------------x

The basis of the venue designated is:
Transaction Arose in Westchester County & at Premises Located Therein

To the above named defendant:

**YOU ARE HEREBY SUMMONED** to file your answer to the annexed complaint on the Plaintiff's Attorney within twenty (20) days after service of this summons, exclusive of the day of service (or within thirty (30) days after the service is complete if this summons is not personally delivered within the State of New York provided by law as noted below and to file your answer to the annexed complaint with the Clerk; upon your failure to answer, judgment will be taken against you for the sum sought in the annexed complaint.

Dated, Hawthorne, N.Y.
    December 20, 2007

        Attorney for Plaintiff
        Arthur Morrison, Esq.
        11 Skyline Drive
        Hawthorne, New York 10532
        914-592-8282

NOTE: The law provides that:

(a) If this summons is served by its delivery to you personally within the City of New York, you must appear and answer within TWENTY days after such service; or

(b) if this summons is served by delivery to any person other than you personally, or is served outside the City of New York, or by publication, or by any means other than personal delivery to you within the City of New York, you are allowed THIRTY days after the proof of service thereof is filed with the Clerk of this Court within which to appear and answer.

Defendant:

STRATEGIC ENERGY, L.L.C.
Address:
150 E.52 St. NYC
15th Floor
Tel 212-752-6643

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
------------------------------------------------------------x

XAND CORPORATION

                Plaintiff,    VERIFIED
                                                  COMPLAINT

             - Against -

STRATEGIC ENERGY, L.L.C.

                Defendant
------------------------------------------------------------x

RECEIVED
DEC 21 2007
TIMOTHY C. IDONI
COUNTY CLERK
COUNTY OF WESTCHESTER

       Plaintiff by its attorney Arthur Morrison, complaining of the defendants alleges:

### JURISDICTION

1.   Plaintiff XAND CORPORATION (hereinafter "XAND") is a corporation duly organized and existing under the laws of the State of New York, authorized to transact business in the State of New York with its principal office at 11 Skyline Drive, Hawthorne, County of Westchester and State of New York.

2.   Defendant STRATEGIC ENERGY, L.L.C. (hereinafter STRATEGIC") upon information and belief is a corporation duly organized and existing under the laws of the Commonwealth of Pennsylvania, authorized to transact business in the State of New York with its principal office in New York at 150 E.52 St. 15th Floor, City County and State of New York Tel 212-752-6643

### BACKGROUND

3.   Plaintiff provides Data Center Services to its customers on a long term contractual basis and electricity is a major component of plaintiff's cost basis.

That the plaintiff entered into a contract signed by plaintiff on November 9, 2005 and countersigned by the defendant on November 16, 2005 for defendant to provide electricity to plaintiff in accordance with the terms of the " Power Supply Coordination Services and Electricity Agreement " (hereinafter "Services Agreement" and/or "PSC Services").

4.   That a copy of such contract signed by plaintiff on November 9, 2005 and countersigned by the defendant on November 16, 2005 is annexed hereto as Exhibit "A."

5.   That the plaintiff, prior to the execution of the Services Agreement informed defendant of its electrical needs at the demised premises.

In response, defendant informed plaintiff that it could save a considerable amount of money compared to Con Edison Rates as defendant would provide electricity at the real time market rate.

6.   That the plaintiff to its detriment relied upon the warranties and representations made by the defendant and entered into the Services Agreement and simultaneously entered into contracts with its own customers utilizing defendants' Services Agreement as a basis to determine its current and future cost basis.

Plaintiff's simultaneous contracts with its customers were calculated at a lower charge for plaintiff's services than it would have charged had it known the true state of facts, that defendant's representations were false and plaintiff was purchasing power at a higher rate than that warranted and represented by the defendant.

7.   That at the time of the execution of the Services Agreement, Exhibit "A' annexed and prior thereto, and as a part thereof, and to induce the plaintiff to enter into the Services Agreement, the defendant falsely and fraudulently stated and represented to

5

plaintiff that the price to be charged to plaintiff would be NYISO "real time" LBMP plus a fixed profit margin for defendant.

8. Upon information and belief, at the time the plaintiff entered into the Services Agreement defendant knew it did not have a program to provide power at the NYISO "real time" LBMP within the State of New York, nor did the defendant service any "real-time rate" accounts in the New York area. Defendant materially misrepresented to plaintiff the fact that it serviced accounts in the New York Area with the NYISO "real time" LBMP which representation was false when made and known by the defendant to be false and intended when made to induce plaintiff to enter into Exhibit "A" annexed.

9. That the defendant promised plaintiff that billing would have 720 line items, each one representing one hour of the monthly rate, and be based upon NYISO "real time" LBMP.

10. That the plaintiff received billings with a single line item amount, not the 720 line items, each one representing one hour of the monthly rate as had been promised by the defendant to induce plaintiff to enter into the contract.

11. That the plaintiff requested a correct bill, in conformity with the terms of the contract with back up documentation providing the 720 line items along with billing rate and power usage for the time period being billed.

12. That after the passage of ten (10) months from commencement of the term of the contract, plaintiff's calculations established the fact that defendant's representations and warranties to induce plaintiff to enter in the contract were false when made, as defendant's bills were not less expensive than Con Edison but in fact, more

expensive.

13. That the plaintiff expended substantial time and resources to review such initial ten (10) months, and subsequent nine (9) months, of billing and learned thereby that defendant had for each of those nineteen (19) months FABRICATED billing data, in order to make the amounts reconcile with its single line item monthly bill, resulting in substantial overpayments by the plaintiff over the contracted for rate agreed to in Exhibit "A" annexed, the parties' Services Agreement.

14. That the plaintiff made good faith efforts to resolve amicably the issue of the overpayments caused by fabricated billing data and to have the defendant recalculate the correct sum plaintiff would have owed had the defendant billed it in conformity with the terms of the contract.

15. That the amount owed the defendant in accordance with express terms of the Exhibit "A" annexed, the parties' "Services Agreement" and/or "PSC Services Agreement", is substantially less than the sum calculated by the defendant and may be less than the sum already paid the defendant by the plaintiff.

16. That the representations so made were known by the defendant to be false when made and were made with intent to deceive and defraud the plaintiff and to induce it to enter into the " Power Supply Coordination Services and Electricity Agreement" for its premises as described above and annexed as Exhibit "A"

17. That the plaintiff, at the time the representations were made, did not know the truth and relied upon them and was thereby induced to enter into the Services Agreement for its premises as described above and annexed as Exhibit "A"

18. That as a result thereof and because of the false and fraudulent representations made by the defendant, the plaintiff sustained damages in the sum of One Million Three Hundred Fifty Thousand ($1,350,000) Dollars.

WHEREFORE, the plaintiff demands judgment against the defendant as follows: For the One Million Three Hundred Fifty Thousand ($1,350,000) Dollars, together with the costs and disbursements of this action.

Dated, Hawthorne, N. Y.
December 20, 2007

*Arthur Morrison, Esq.*
Attorney for Plaintiff
11 Skyline Drive
Hawthorne, New York 10532
914-592-8282

Verification

STATE OF NEW YORK     )
                      ) ss.:
COUNTY OF WESTCHESTER )

LEE S. WEINSTEIN, being duly sworn, deposes and says:

He is the president of the Xand Corporation, the plaintiff in the above entitled action which is a corporation created under and by virtue of the laws of the State of New York, that he has read the foregoing complaint and knows the contents thereof; that the same is true to his knowledge, except as to the matters therein stated to be alleged upon information and belief, and that as to those matters he believes them to be true.

Sworn to before me this 20th
Day of December, 2007

_____
LEE S. WEINSTEIN

_____
Deborah Lee
Notary Public

Notary Public
State of New York
Deborah Lee ID# 01LE6016680
Expires November 23, 2010



**Strategic Energy**
sei.com
(888) 925-9115

PowerSupply Coordination®
Service Agreement
New York
LBMP Product

This PowerSupply Coordination Service Agreement is made as of November 09, 2005 by and between Strategic Energy L.L.C. ("Strategic Energy") and Xand Corporation ("Buyer"). The PowerSupply Coordination Service Agreement together with all Exhibits shall collectively be referred to as the "Agreement."

**1. Nature of Service:**

Strategic Energy agrees to provide PowerSupply Coordination Services and Electricity ("Service") to meet Buyer's full usage requirements at Buyer's Facilities and Buyer agrees to receive and pay for PowerSupply Coordination Services and Electricity to meet Buyer's full usage requirements at the Buyer's Facilities. PowerSupply Coordination ("PSC") Services are the services provided by Strategic Energy in accordance with the company's policies and procedures, in selecting the optimum mix of Electricity supplies to match the Facility load. The Electricity provided under this Agreement shall be Firm, subject to Force Majeure.

**2. Term:**

This Agreement shall be effective upon execution by both parties and continue for the period of months identified in the Facility List, which is attached hereto as Exhibit A ("Term") from the start date, which shall be the meter read identified in Exhibit A. Strategic Energy shall use its best efforts to immediately commence Service in the start month as set forth above. However, Buyer acknowledges that the commencement of Service hereunder is dependent upon confirmation by the Host Utility of the completion of all required enrollment processes. At the end of the Term, if the Buyer and Strategic Energy have not entered into any written modification, amendment or renewal of this Agreement and if Buyer has not elected to obtain service from another provider of electricity, this Agreement shall automatically continue on a year-to-year basis ("Yearly Renewal") until terminated by either party upon thirty (30) day notice to the other party.

**3. Service Options and Price:**

3.1. In order to supply Buyer's full usage requirements for the Term of this Agreement, the Energy component of Buyer's Electricity requirements shall be met with Energy from the New York ISO ("NY ISO") Real Time LBMP and Buyer will pay Strategic Energy the NY ISO Real Time LBMP, plus applicable costs and fees as set forth in this Agreement. BY EXECUTION OF THIS AGREEMENT, BUYER ACKNOWLEDGES THAT THE NY ISO REAL TIME LBMP MARKET IS A CONSTANTLY FLUCTUATING MARKET PRICE AND THUS THE LBMP WILL VARY. CUSTOMER ASSUMES ALL RISKS OF PRICE MOVEMENTS AND AGREES TO PAY FOR THE SERVICES PROVIDED IN ACCORDANCE WITH THIS AGREEMENT.

3.2. Price: The total cost to be paid by Buyer for the Services provided under this Agreement shall include the applicable costs and fees for the following components: Energy, Capacity, Transmission, Ancillary Services, if any, losses, all costs associated with Strategic Energy's obligation to provide capacity as required by the New York ISO ("Installed Capacity Costs"), congestion, as applicable, gross receipts tax, all sales taxes, transactional taxes or other governmental or regulatory imposed taxes or surcharges to which Buyer may be subject and the PSC Services Fee.

3.3. PSC Services Fee: The PSC Services Fee is 0.633 cents per kilowatt-hour for each kilowatt-hour of Electricity provided under this Agreement.

3.4. Third Party Costs: Buyer acknowledges that any costs assessed by any third party for the provision of service hereunder, including but not limited to switching and meter related costs, are not included in the price for any Service provided hereunder and shall be the responsibility of Buyer.

**4. Billing and Payment:**

Buyer will receive from Strategic Energy a monthly invoice following their meter read date for Services provided under this Agreement. Strategic Energy and Buyer agree upon the following condition regarding its non-interval monthly meter accounts, if any: Strategic Energy will deaggregate the Buyer's usage and Buyer agrees to accept the results of this deaggregation as its hourly billing determinants. Payment-in-full is due 20 calendar days from the date of the invoice. If Buyer fails to remit payment in full in any month, interest will be assessed on the late balance at an interest rate that is the lower of 1.5% per month or the highest rate allowed by law.

11/0/2005 10:51:07 AM    RH    00131557-0001c
Correct Version Date: 11/04/2005



12/21/2007 12:54 FAX 9145923482          XAND                                    @011
11/10/2005 10:43 FAX · 12127526636                          → Contracts          @003/007
Nov 09 05 03:15p     RON SPECHLER                    201-767-2005                P.3

In any month Strategic Energy may provide estimated charges for certain cost components upon the bill, which shall then be reconciled with actual information within a commercially reasonable time from the receipt of the actual usage or other pertinent billing information. If Buyer's Facilities has any interval meters, Buyer acknowledges that the usage information for such meters contained on the Strategic Energy bill may vary from that contained upon the Host Utility bill as a result of different billing cycles being utilized for those meter reads. If Buyer has Facilities with different meter read dates and Buyer chooses to receive one consolidated bill for all Facilities, Strategic Energy may choose the day of the month on which to deliver a bill to Buyer. No adjustments or corrections shall be made to any amount billed after the lapse of the longer of twenty-four (24) months from the date of the bill or the time frame permitted by the Host Utility's tariff for adjustments to consumption information. Each party shall have the right, at its sole expense and upon prior written notice, to examine the records of the other party to verify the accuracy of any statement, charge, notice or computation made pursuant to this Agreement.

5. Credit:

Strategic Energy may request that Buyer provide financial information sufficient for Strategic Energy to complete a credit review prior to providing Service hereunder. If, prior to commencing Service or at any time during the Term of this Agreement, Strategic Energy has good faith concerns about the creditworthiness of Buyer or Buyer's ability to perform hereunder, Strategic Energy may require that Buyer provide credit assurances, in an amount and in a form determined by Strategic Energy in a commercially reasonable manner, including but not limited to, an escrow account, deposit, letter of credit, parental guaranty, or surety bond. If such credit assurance is not provided within seven (7) days of being requested by Strategic Energy, then Strategic Energy may terminate this Agreement without any additional notice.

6. Termination:

This Agreement may be terminated at any time after the date hereof, (i) by mutual consent in writing by the parties, or (ii) by either party if there has been a failure to perform or material misrepresentation or breach of warranty, covenant or condition and such failure or breach is not cured within twenty-five (25) calendar days of the defaulting party's receipt of written notice from the non-defaulting party, or (iii) during a Yearly Renewal pursuant to Paragraph 2 above, by either party upon providing the other party with thirty (30) days prior written notice.

In the event of termination, all further obligations of the parties under this Agreement shall terminate without further liability of the parties, except for the payment by the owing party of any sums due and owing to the other party for Services rendered prior to the termination date, any direct actual damages, any indemnification or confidentiality obligation of either party which has arisen hereunder and any other obligation hereunder which by its nature survives the termination of this Agreement.

7. Load Change Information:

Buyer shall give Strategic Energy at least thirty (30) days notice ("Notice of Load Change") prior to removing a Facility from Service hereunder as a result of ceasing operations at such Facility.

8. Change in Law or Regulation:

If, during the Term of this Agreement, regulatory changes shift costs from the Host Utility to Strategic Energy or from Strategic Energy to the Host Utility, then such costs or credits will be passed through to the Buyer. If any laws, orders or regulations are passed, modified, implemented or interpreted by judicial or regulatory order or legislative enactment, which creates additional costs not currently included in the Price or increases in the cost components of the Price (the "Incremental Charge"), then Strategic Energy shall pass through such Incremental Charge to be paid by Buyer above the Price. Buyer may, after receiving notice that Strategic Energy intended to pass through Incremental Charge(s) pursuant to this Section, provide Strategic Energy with thirty (30) days notice of termination of the Agreement. Upon termination, all further obligations of the parties under this Agreement shall terminate without further liability of the parties, except for the payment by the owing party of any sums due and owing to the other party for Services rendered prior to the termination date, any direct actual damages incurred by Strategic Energy (which shall mean the positive difference, if any, between the Price and the current market price for Electricity) and the payment of any reasonable costs incurred as a result of such termination including the payment of PSC fee for the balance of the Term (based upon the anticipated usage), any indemnification or confidentiality obligation of either party which has arisen hereunder and any other obligation hereunder which by its nature survives the termination of this Agreement.

9. Agreement to Indemnify:

Subject to the limitations set forth herein, each party shall defend, indemnify and hold harmless the other party, its affiliates and their respective employees, officers, or agents from any and all claims, liability and expense arising out of any bodily injury, death or damage to property (other than bodily injury, death or damage to property proximately caused by the negligence or intentional misconduct of any such other party or its servants or employees) related to the provision of Services hereunder, except that each party shall be responsible for all claims of its own employees, officers or agents under any workmen's compensation law or similar law.

11/9/2005 10:51:07 AM                               RH                           00131557-0001c
Contract Version Date 11/04/2005

11

12/21/2007 12:55 FAX 9145923482        XAND                                    ☒012
11/10/2005 10:43 FAX 12127526636                              → Contracts      ☒004/007
Nov 09 05 03:15p    RON SPECHLER              201-767-2005          P.4

**10. Limitation of Liability:**

LIABILITY IS LIMITED TO DIRECT ACTUAL DAMAGES AS THE SOLE AND EXCLUSIVE REMEDY AND ALL OTHER REMEDIES OR DAMAGES ARE EXPRESSLY WAIVED. IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER FOR ANY INCIDENTAL, CONSEQUENTIAL, OR PUNITIVE DAMAGES, LOST PROFITS OR OTHER BUSINESS INTERRUPTION DAMAGES. EACH PARTY AGREES THAT IT HAS A DUTY TO MITIGATE DAMAGES AND COVENANTS THAT IT WILL USE COMMERCIALLY REASONABLE EFFORTS TO MINIMIZE ANY DAMAGES IT MAY INCUR AS A RESULT OF THE OTHER PARTY'S PERFORMANCE OR NON-PERFORMANCE OF THIS AGREEMENT.

**11. Applicable Law:**

As to all matters of construction and interpretation, this Agreement shall be construed, interpreted, and governed under and by the laws of the State of New York, without regard to its choice of law provisions.

**12. Waiver:**

No waiver by either party of any default or defaults by the other party under this Agreement shall operate as a waiver of any future default or defaults, whether of a like or different character or nature.

**13. Severability:**

The various provisions of this Agreement are severable. The invalidity, illegality or unenforceability of any portion or provision shall not affect the validity, legality or enforceability of any other portion or provision of this Agreement.

**14. Notices and Correspondence:**

Any notice or other document to be given or served hereunder or under any document or instrument executed pursuant hereto shall be in writing and shall be delivered to the appropriate address specified below. Notice sent by facsimile or other electronic means shall be deemed to have been received by the close of the business day on which it was transmitted or such earlier time as is confirmed by the receiving party. Notice delivered by courier shall be deemed to have been received on the business day after it was sent or such earlier time as is confirmed by the receiving party. Notice delivered by mail shall be deemed to have been received at the end of the third business day after the date of mailing by prepaid first class mail, except that when there is a strike affecting delivery of mail, all notices shall be delivered by courier or by facsimile or other electronic means.

Strategic Energy
Attn: Customer Service Manager
Two Gateway Center
Pittsburgh, PA 15222
Phone: (412) 394-5600
Fax: (412) 644-3211
Monday through Friday from
8:00AM through 5:00PM Eastern Time

Xand Corporation
Attn: Lee S Weinstein
11 Skyline Dr
Hawthorne, NY 10532
Phone: (914) 592-8282
Fax: (914) 592-3482

**15. Confidentiality:**

Except when disclosure may be required by law or a party has obtained written consent from the other party, each party agrees that it shall not disclose to a third party (other than the party's employees, lenders, counsel, consultants, agents or accountants who have agreed to keep such terms confidential) and will maintain in strict confidence the terms, conditions and pricing information set forth and made a part of this Agreement. Strategic Energy agrees that such confidential treatment shall extend to Buyer's usage and consumption data which is not otherwise in the public domain and which will not be disclosed except as appropriate to carry out the terms of this Agreement or as requested in writing by the Buyer. The parties shall be entitled to all remedies available at law or in equity to enforce, or seek relief in connection with this confidentiality obligation. This provision shall survive the termination of this Agreement for a period of two (2) years.

**16. Representations and Warranties:**

As a material inducement to entering into this Agreement, each party, with respect to itself hereby represents and warrants to the other party as follows:

(a) It is duly organized, validly existing and in good standing under the laws of the jurisdiction of its formation and is qualified to conduct its business in those jurisdictions necessary to perform this Agreement;

(b) the execution and delivery of this Agreement are within its powers, have been duly authorized by all necessary actions and/or board approvals, and do not violate any of the terms or conditions in its governing documents or any contract to which it is a party or any law applicable to it;

(c) as of the date of Service commencement hereunder, it shall have all regulatory authorizations necessary for it to legally perform its operations;

11/9/2006 10:51:07 AM                        RH                           00131657-0001c
Contract Version Dated 11/04/2005

12/21/2007 12:55 FAX 9145923482         XAND                                              ☒013
11/10/2005 10:44 FAX  12127526636                                    → Contracts    ☒005/007
Nov 09 05 03:15p    RON SPECHLER                        201-767-2005              P.5

(d) this Agreement constitutes a legal, valid and binding obligation of such party enforceable against it in accordance with its terms, subject to bankruptcy, insolvency, reorganization, and other laws affecting creditors' rights generally and with regard to equitable remedies, subject to the discretion of the court before which proceedings to obtain same may be pending;

(e) there are no bankruptcy, insolvency, reorganization, receivership or other similar proceedings pending or being contemplated by it or, to its knowledge, threatened against it;

(f) the Facility(ies) to be provided the Services described herein are not contractually bound by another agreement for Electricity services that will overlap with the Term stated in Facility List; and

(g) if it is a property management company acting on behalf of the owner of the Facility(ies), it has the authority to execute and bind the Facility(ies) to this Agreement for the Term stated in the Facility List and that the term of its property management agreement with the owner of the Facility(ies) is equal to or greater than the Term of this Agreement.

Each party covenants that it shall cause its respective representations and warranties to remain true and correct throughout the Term of this Agreement.

17. Parties, Assignment:

This Agreement shall inure to and benefit the parties hereto and their permitted successors and assigns. Neither party may assign this Agreement without the prior written consent of the other party, which consent shall not be unreasonably withheld. Notwithstanding the above, Strategic Energy may, without the consent of Buyer, assign this Agreement and its rights and obligations hereunder for the limited purpose of securing credit and financing. Further, either party may, without the need for consent from the other party transfer or assign this Agreement (a) to an Affiliate of such party provided that all the persons obligated to fulfill the assigning party's obligations under the Agreement after the assignment have substantially equivalent financial capability to that of all other persons obligated to fulfill the assigning party's obligations under the Agreement before the assignment, or (b) to any person or entity succeeding to all or substantially all of the assets of such party; provided, however, that any such assignee shall agree to be bound by the terms and conditions hereof. As used herein, "Affiliate" shall mean with respect to any person, any other person (other than an individual) that, directly or indirectly, through one or more intermediaries, controls, or is controlled by, or is under common control with, such person. For purposes of the foregoing definitions, "control" means the direct or indirect ownership of more than fifty percent (50%) of the outstanding capital stock or other equity interests having ordinary voting power.

18. Force Majeure:

To the extent either party is prevented by Force Majeure from carrying out, in whole or part, its obligations under this Agreement and such party (the "Claiming Party") gives notice and details of the Force Majeure to the other party as soon as practicable, then, the Claiming Party shall be excused from the performance of its obligations. The Claiming Party shall remedy the Force Majeure with all reasonable dispatch. The non-Claiming Party shall not be required to perform or resume performance of its obligations to the Claiming Party corresponding to the obligations of the Claiming Party excused by Force Majeure.

19. Definitions:

As used herein, unless the context clearly indicates otherwise, the following terms shall have the meaning set forth below:

"Ancillary Services"

means wholesale electric services and products required to facilitate delivery of Energy to the Host Utility.

"Capacity"

means the ability to provide Energy as needed, as measured in kilowatts (kW) or megawatts (MW).

"Distribution"

means all delivery service for Energy, Capacity and applicable Ancillary Services provided by the Host Utility, excluding Transmission.

"Electricity"

means the combination of Energy, Capacity, Transmission, and Ancillary Services which are provided by Strategic Energy under this Agreement. Strategic Energy will deliver the Electricity to the Host Utility for delivery to Buyer's Facilities.

"Energy"

means electrical energy, as measured in kilowatt hours (kWh) or megawatt hours (MWh).

"Facility (ies)"

means the plants, works, operations and/or facilities for which Buyer has the authority to purchase Electricity under this Agreement and which are set forth on the "Facility List" attached to this Agreement as Exhibit "A", as may be amended from time to time.

11/9/2005 10:51:07 AM                        RH                              00131557-0001c

12/21/2007 12:56 FAX 9145923482    XAND    ☒014
11/10/2005 10:44 FAX 12127526636    • Contracts    ☒006/007
Nov 09 05 03:18p    RON SPECHLER    201-767-2005    p.6

**"Firm"**

means that parties may only suspend performance hereunder to the extent that such performance is prevented for reasons of Force Majeure.

**"Force Majeure"**

means any "Act of God" or other unexpected and disruptive event beyond the reasonable control of either party that interferes with either party's ability to perform its obligations under this Agreement, except for the obligation to pay monies due.

**"Host Utility"**

means any investor-owned utility, municipal utility, public utility, or other provider of electric lines whose system is directly interconnected with and which provides Distribution to Buyer's Facilities.

**"Locational Based Marginal Price ("LBMP")"**

"Locational Based Marginal Price ("LBMP")" means the hourly integrated market clearing marginal price for Energy at the location the Energy is delivered or received as defined by the New York ISO.

**"New York ISO"**

means the New York Independent System Operator.

**"Off-Peak"**

means Monday through Sunday hours ending ("HE") 0100 through HE 0700 and HE 2400 and Saturday through Sunday HE 0800 through HE 2300. Off Peak also includes NERC Holidays HE 0100 through HE 2400. HE shall be at Eastern prevailing time.

**"On-Peak"**

means Monday through Friday HE 0800 through HE 2300, excluding NERC Holidays. HE shall be at Eastern prevailing time.

**"Point(s) of Delivery"**

shall mean the point(s) where Energy is delivered to the Host Utility. Title to, control and possession of, Electricity shall pass from Strategic Energy to Buyer at the Point of Delivery.

**"Transmission"**

means all delivery services for Energy, Capacity and applicable Ancillary Services, at any voltage level, which are regulated by the Federal Energy Regulatory Commission ("FERC").

**20. Entire Agreement:**

This Agreement and any Exhibits contain the entire understanding of the parties with respect to the subject matter contained herein. There are no promises, covenants or understandings other than those expressly set forth herein. This Agreement may only be amended by a written instrument executed by both parties. Any modifications to this Agreement, including any Exhibit, must be accepted and agreed to in writing by Buyer.

**21. Counterparts:**

This Agreement may be executed in one or more than one counterpart, including by facsimile, and each executed counterpart shall be considered an original, all of which together shall constitute one and the same Agreement.

IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed.

| STRATEGIC ENERGY, L.L.C. | Xand Corporation |
|---|---|
| By: _____ | By: _____ |
| Print Name: Andrew Washburn | Print Name: LEE S. WEINSTEIN |
| Title: Chief Financial Officer | Title: PRESIDENT |
| Date: NOV 16 2005 | Date: 11-09-05 |

11/9/2005 10:51:06 AM    RH    00131557-0001c
Contract Version Date 11/04/2005

12/21/2007 12:56 FAX 9145923482        XAND                                           ☒015
   11/10/2005 10:45 FAX 12127528838                              ✦ Contracts         ☒007/007
Nov 09 05 03:16p    RON SPECHLER            201-767-2005                              P.7
11/09/05 WED 14:58 FAX

**✦ Strategic Energy®**

PowerSupply Coordination® Service Agreement
New York
LBMP Product

Exhibit "A"
**FACILITY LIST**

This Facility List shall confirm the transaction agreed to on __11-09-05__, 2005 between Xand Corporation ("Buyer") and Strategic Energy L.L.C. ("Strategic Energy") regarding the purchase of Services under the following terms and conditions:

1. Facilities.

| Facility Location | Account Meter # (ES ID#) | Host Utility | Rate Class | Estimated Historical Annual Usage (kWh) | Maximum Peak Demand (kW) |
|---|---|---|---|---|---|
| 11 Skyline Drive 011 | 855001108510010 | CONE | EL9 | 2,641,200 | 512 |

2. Term, per Section 2:

   Period of Months: __12__

   Meter Read Start Date: __12/2005__

This Facilities List is being provided pursuant to and in accordance with the PowerSupply Coordination Services Agreement dated _____ between Buyer and Strategic Energy, and constitutes part of and is subject to the terms and provisions of such Agreement. Terms used but not defined herein shall have the meanings ascribed to them in the PowerSupply Coordination Services Agreement.

This Facilities List may be executed in one or more counterparts, including by facsimile, and each executed counterpart shall be considered an original, all of which together shall constitute one and the same Agreement.

Strategic Energy, L.L.C.                     Xand Corporation
By: _[signature]_                             By: _[signature]_
Print Name: __Andrew Washburn__               Print Name: __LEE S. WEINSTEIN__
Title: __Chief Financial Officer__            Title: __PRESIDENT__
Date: __NOV 16 2005__                         Date: __11-09-05__

Printed on 11/9/2005 10:53:10 AM     Page 1 of 1               00131557-0001PowrA

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
------------------------------------------------------------x

XAND CORPORATION

                        Plaintiff,

              - Against -

STRATEGIC ENERGY, L.L.C.

                        Defendant
------------------------------------------------------------x

**SUMMONS AND VERIFIED COMPLAINT**

I certify compliance with rule 130.1.1 of the Rules of the Chief Adminsitratror

Dated, Hawthorne, N.Y.
       December 20, 2007

                                        Arthur Morrison, Esq.
                                        Attorney for Plaintiff
                                        11 Skyline Drive
                                        Hawthorne, New York 10532
                                        914-592-8282