ARTHUR MORRISON
Bar Code (AM5678)
Office and PO Address
11 Skyline Drive
Hawthorne, New York 10532
(T) 914-592-8282
(F) 914-592-3482
Attorney for Plaintiff
Xand Corporation

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

XAND CORPORATION,                                  Case# 08-Civ.0513(SCR)

                              Plaintiff,                  Judge Robinson

        -Against-                                   Plaintiff's Affidavit in
                                                 Opposition to Dismissal Motion
STRATEGIC ENERGY, LLC

                              Defendant.

---------------------------------------------------------------x
State of New York      )
                       ) ss:
County of Westchester)

        Xand Corporation ("Plaintiff") by its president and CEO Lee S.

Weinstein ("Weinstein") respectfully submits this Affidavit in Opposition

("Opposition") to the defendant's motion to dismiss ("the Dismissal Motion"

and/or "Defendant's Dismissal Motion").

## JURISDICTION

1.        Plaintiff. Xand Corporation (hereinafter " XAND") is a corporation duly

organized and existing under the laws of the State of New York, authorized to transact

business in the State of New York with its principal office at Hawthorne, New York.

2.      In its complaint, plaintiff alleged that the defendant Strategic Energy,

L.L.C. (hereinafter "Strategic ") at the time the lawsuit was commenced on December 21,

2007 was a corporation duly organized and existing under the laws of the Commonwealth of

Pennsylvania, authorized to transact business in the State of New York and at that time had its

principal office in New York at 150 E.52 St. 15th Floor, City, County and State of New York Tel

212-752-6643.

<div align="center">

BACKGROUND;
COMPLAINT STATES A MERITORIOUS CAUSE OF ACTION

</div>

3.      Plaintiff provides Data Center Services to its customers on a

long term contractual basis and electricity is a major component of plaintiff's

cost basis.

4.      The  plaintiff entered into a contract signed by plaintiff on November 9,

2005 and countersigned by the defendant on November 16, 2005 for defendant to provide electricity to

plaintiff in accordance with the terms of the " Power Supply Coordination Services and

Electricity Agreement " (hereinafter "Services Agreement" and/or "PSC Services").

5.      A copy of such contract signed by plaintiff on November 9, 2005 and

countersigned by the defendant on November 16, 2005 is annexed hereto as Exhibit "A."

6.      The plaintiff,   prior to the execution of the Services Agreement informed

defendant of its electrical needs at the demised premises.

7.      In response, when informed by plaintiff of its electrical needs for the

demised premises, defendant informed plaintiff that it could save a considerable amount of money

compared to Con Edison Rates as defendant would provide electricity at the real time market rate

( hereinafter "Real Time Market Rate").

<div align="center">

2

</div>

8.      That the plaintiff to its detriment, relied upon the warranties and representations made by the defendant and entered into the Services Agreement and simultaneously entered into contracts with its own customers utilizing defendants' Services Agreement as a basis to determine its current and future cost basis.

9.      Plaintiff entered into simultaneous contracts with its own customers which contracts were calculated at a lower charge for plaintiff's services than it would have charged had it known the true state of facts, that defendant's representation s were false because plaintiff was purchasing power at a higher rate than it had warranted and represented by the defendant.

10.     That at the time of the execution of the Services Agreement, Exhibit "A' annexed and prior thereto, and as **a** part thereof, and to induce the plaintiff to enter into the Services Agreement, Exhibit "A" annexed, the defendant falsely and fraudulently stated and represented to plaintiff that the price to be charged to plaintiff would be NYISO "real time" LBMP plus a fixed profit margin for defendant.

11.     Further, at the time the plaintiff entered into the Services Agreement defendant knew and concealed from the plaintiff the fact it did not have a program to provide power at the NYISO "real time" LBMP, plus a fixed profit margin for defendant within the State of New York, nor did the defendant service any "real time" LBMP in the New York area.

12.     The defendant in fact also materially misrepresented to plaintiff that it serviced accounts in the New York Area with the NYISO "real time" LBMP, because such representation was false when made and known by the defendant to be false and intended when made by defendant to induce plaintiff to enter into Exhibit "A" annexed, the" Power Supply Coordination Services and Electricity Agreement.

3

13.     That the defendant promised plaintiff that billing would have 720 line items, each one representing one hour of the monthly rate, and be based upon NYISO "real time" LBMP.

14.     That the plaintiff however received billings with single line item amount, not the 720 line items, each one representing one hour of tie monthly rate as had been promised by the defendant to induce plaintiff to enter into the contract.

15.     That heretofore, the plaintiff requested that defendant provide a " Corrected Bill" one that was in conformity with the terms of the contract, Exhibit "A" annexed, with back up documentation providing the 720 line items along with billing rate and Power usage for the time period being billed.

16.     That after the passage of ten (10) months from commencement of the term of the contract, Exhibit "A" annexed, plaintiff's calculations established the fact that defendant's representations and warranties to induce plaintiff to enter in the contract were false when made, because defendant's bills were not less expensive than Con Edison but in fact, more expensive.

17.     That the plaintiff expended substantial time and resources to review such initial ten (10) months of billing and subsequent nine (9) Months, of billing and /earned thereby that defendant had for each of those nineteen (19) months provided fabricated billing data, in order to make the amounts reconcile with its single line item monthly bill, resulting in substantial overpayments by the plaintiff over the contracted for rate agreed to in Exhibit "A" annexed, the parties' Services Agreement.

18.     That the plaintiff made good faith efforts, to resolve amicably the issue of the overpayments caused by fabricated billing data and to have the defendant recalculate the correct sum plaintiff would have owed had the defendant billed it in conformity the terms of the contract Exhibit "A" annexed, to wit: the parties' Services Agreement.

19.     That the amount owed the defendant in accordance with express terms of the Exhibit "A" annexed, the parties' Services Agreement is substantially less than the sum calculated by the defendant and may be less than the sums already paid the defendant by the plaintiff

20.     Plaintiff's complaint seeks damages from the defendant of $1,350,000 because the representations so made were known by the defendant to be false when made and were made with intent to deceive and defraud the plaintiff and to induce it to enter into Exhibit "A", the " Power Supply Coordination Services arid Electricity Agreement" for its business premises.

21.     This suit was commenced because it was the defendant that owed the plaintiff money, not the other way around.

22.     The complaint and extensive written documentation exchanged with the defendant's employees, before and after the contract, Exhibit "A" annexed was executed clearly establish the existence of a meritorious cause of action in favor of plaintiff. As a matter of judicial discretion, plaintiff should be afforded an opportunity to present this case in court so that a fair and just resolution of this matter can ultimately be reached.

DEFENDANT CANNOT CONTINUE IN THE CASE; MUST BE SUBSTITUTED OUT
AS A PARTY DEFENDANT AS IT NOT A REAL PARTY IN INTEREST

23.     Plaintiff's attorney will provide his own declaration about the impact of Certain Federal Rules including the need for Joinder of the Real Party in Interest.

24.     Such attorney not the deponent will provide legal argument for the Court. Factually, deponent understands that that once defendant Strategic was sold, it has no further standing in this Case and must be substituted out of the case.

25.     Plaintiff's attorney informs the Court, by means of Exhibit "B" annexed to this Affidavit, his Reply Declaration in support of the plaintiff's motion-in-chief to remand, which provided documentation that Strategic lacked standing in this case after April 2, 2008, once Strategic was sold for 300 Million Dollars and replaced by both Direct Energy Service LLC located in Toronto, Canada and its parent, Centrica PLC located in the United Kingdom; Strategic was no longer entitled to have the Court decide the merits of the dispute.

<div align="center">CONCLUSION</div>

26.     The motion to dismiss should be denied as the plaintiff has established from the complaint and extensive written documentation exchanged with the defendant's employees, before and after the contract, Exhibit "A" annexed was executed that there exists a meritorious cause of action in favor of plaintiff.

27.     The plaintiff's attorney in a separate declaration will deal with the legal issue that there must be a substitution of parties and Strategic cannot continue to act before this Court because it no longer is the real party in interest.

/s/ Lee S. Weinstein

Sworn to before me this
26th day of August, 2008          _____
                                  LEE S. WEINSTEIN

/s/ Deborah Lee

_____
Deborah Lee
Notary Public
State of New York

EXHIBIT 'A'

" Power Supply Coordination Services arid Electricity Agreement"

12/21/2007 12:54 FAX 9145923482    XAND    ☑010

11/10/2005 10:42 FAX 12127526836    → Contracts    ☑002/007

Nov 09 05 03:14p    RON SPECHLER    201-767-2005    P.2

<div style="border:1px solid">

Strategic
Energy®

sel.com
(888) 925-9115

**PowerSupply Coordination®
Service Agreement
New York
LBMP Product**
</div>

This PowerSupply Coordination Service Agreement is made as of November 09, 2005 by and between Strategic Energy L.L.C. ("Strategic Energy") and Xand Corporation ("Buyer"). The PowerSupply Coordination Service Agreement together with all Exhibits shall collectively be referred to as the "Agreement."

**1. Nature of Service:**

Strategic Energy agrees to provide PowerSupply Coordination Services and Electricity ("Service") to meet Buyer's full usage requirements at Buyer's Facilities and Buyer agrees to receive and pay for PowerSupply Coordination Services and Electricity to meet Buyer's full usage requirements at the Buyer's Facilities. PowerSupply Coordination ("PSC") Services are the services provided by Strategic Energy in accordance with the company's policies and procedures, in selecting the optimum mix of Electricity supplies to match the Facility load. The Electricity provided under this Agreement shall be Firm, subject to Force Majeure.

**2. Term:**

This Agreement shall be effective upon execution by both parties and continue for the period of months identified in the Facility List, which is attached hereto as Exhibit A, ("Term") from the start date, which shall be the meter read identified in Exhibit A. Strategic Energy shall use its best efforts to immediately commence Service in the start month as set forth below. However, Buyer acknowledges that the commencement of Service hereunder is dependent upon confirmation by the Host Utility of the completion of all required enrollment processes. At the end of the Term, if the Buyer and Strategic Energy have not entered into any written modification, amendment or renewal of this Agreement and if Buyer has not elected to obtain service from another provider of electricity, this Agreement shall automatically continue on a year-to-year basis ("Yearly Renewal") until terminated by either party upon thirty (30) day notice to the other party.

**3. Service Options and Price:**

3.1. In order to supply Buyer's full usage requirements for the Term of this Agreement, the Energy component of Buyer's Electricity requirements shall be met with Energy from the New York ISO ("NY ISO") Real Time LBMP and Buyer will pay Strategic Energy the NY ISO Real Time LBMP, plus applicable costs and fees as set forth in this Agreement. BY EXECUTION OF THIS AGREEMENT, BUYER ACKNOWLEDGES THAT THE NY ISO REAL TIME LBMP MARKET IS A CONSTANTLY FLUCTUATING MARKET PRICE AND THUS THE LBMP WILL VARY. CUSTOMER ASSUMES ALL RISKS OF PRICE MOVEMENTS AND AGREES TO PAY FOR THE SERVICES PROVIDED IN ACCORDANCE WITH THIS AGREEMENT.

3.2. Price: The total cost to be paid by Buyer for the Services provided under this Agreement shall include the applicable costs and fees for the following components: Energy, Capacity, Transmission, Ancillary Services, if any, losses, all costs associated with Strategic Energy's obligation to provide capacity as required by the New York ISO ("Installed Capacity Costs"), congestion, as applicable, gross receipts tax, all sales taxes, transactional taxes or other governmental or regulatory imposed taxes or surcharges to which Buyer may be subject and the PSC Services Fee.

3.3. PSC Services Fee: The PSC Services Fee is 0.633 cents per kilowatt-hour for each kilowatt-hour of Electricity provided under this Agreement.

3.4. Third Party Costs: Buyer acknowledges that any costs assessed by any third party for the provision of service hereunder, including but not limited to switching and meter related costs, are not included in the price for any Service provided hereunder and shall be the responsibility of Buyer.

**4. Billing and Payment:**

Buyer will receive from Strategic Energy a monthly invoice following their a meter read date for Services provided under this Agreement. Strategic Energy and Buyer agree upon the following condition regarding its non-interval monthly meter accounts, if any: Strategic Energy will deaggregate the Buyer's usage and Buyer agrees to accept the results of this deaggregation as its hourly billing determinants. Payment-in-full is due 20 calendar days from the date of the invoice. If Buyer fails to remit payment in full in any month, interest will be assessed on the late balance at an interest rate that is the lower of 1.5% per month or the highest rate allowed by law.

11/10/2005 10:51:07 AM    R-1    00131557-0001c
Commercial version: Dule 11/04/2005



In any month Strategic Energy may provide estimated charges for certain cost components upon the bill, which shall then be reconciled with actual information within a commercially reasonable time from the receipt of the actual usage or other pertinent billing information. If Buyer's Facilities has any interval meters, Buyer acknowledges that the usage information for such meters contained on the Strategic Energy bill may vary from that combined upon the Host Utility bill as a result of different billing cycles being utilized for those meter reads. If Buyer has Facilities with different meter read dates and Buyer chooses to receive one consolidated bill or all Facilities, Strategic Energy may choose the day of the month on which to deliver a bill to Buyer. No adjustments or corrections shall be made to any amount billed after the lapse of the longer of twenty-four (24) months from the date of the bill or the time frame permitted by the Host Utility's tariff for adjustments to consumption information. Each party shall have the right, at its sole expense and upon prior written notice, to examine the records of the other party to verify the accuracy of any statement, charge, notice or computation made pursuant to this Agreement.

**5. Credit:**

Strategic Energy may request that Buyer provide financial information sufficient for Strategic Energy to complete a credit review prior to providing Service hereunder. If, prior to commencing Service or at any time during the Term of this Agreement, Strategic Energy has good faith concerns about the creditworthiness of Buyer or Buyer's ability to perform hereunder, Strategic Energy may require that Buyer provide credit assurances, in an amount and in a form determined by Strategic Energy in a commercially reasonable manner, including but not limited to, an escrow account, deposit, letter of credit, parental guaranty, or surety bond. If such credit assurance is not provided within seven (7) days of being requested by Strategic Energy, then Strategic Energy may terminate this Agreement without any additional notice.

**6. Termination:**

This Agreement may be terminated at any time after the date hereof, (i) by mutual consent in writing by the parties, or (ii) by either party if there has been a failure to perform or material misrepresentation or breach of warranty, covenant or condition and such failure or breach is not cured within twenty-five (25) calendar days of the defaulting party's receipt of written notice from the non-defaulting party, or (iii) during a Yearly Renewal pursuant to Paragraph 2 above, by either party upon providing the other party with thirty (30) days prior written notice.

In the event of termination, all further obligations of the parties under this Agreement shall terminate without further liability of the parties, except for the payment by the owing party of any sums due and owing to the other party for Services rendered prior to the termination date, any direct actual damages, any indemnification or confidentiality obligation of either party which has arisen hereunder and any other obligation hereunder which by its nature survives the termination of this Agreement.

**7. Load Change Information:**

Buyer shall give Strategic Energy at least thirty (30) days notice ("Notice of Load Change") prior to removing a Facility from Service hereunder as a result of ceasing operations at such Facility.

**8. Change in Law or Regulation:**

If, during the Term of this Agreement, regulatory changes shift costs from the Host Utility to Strategic Energy or from Strategic Energy to the Host Utility, then such costs or credits will be passed through to the Buyer. If any laws, orders or regulations are passed, modified, implemented or interpreted by judicial or regulatory action or legislative enactment, which creates additional costs not currently included in the Price or increase in the cost components of the Price (the "Incremental Charge"), then Strategic Energy shall pass through such Incremental Charge to be paid by Buyer above the Price. Buyer may, after receiving notice that Strategic Energy intended to pass through Incremental Charge(s) pursuant to this Section, provide Strategic Energy with thirty (30) days notice of termination of this Agreement. Upon termination, all further obligations of the parties under this Agreement shall terminate without further liability of the parties, except for the payment by the owing party of any sums due and owing to the other party for Services rendered prior to the termination date, any direct actual damages incurred by Strategic Energy (which shall mean the positive difference, if any, between the Price and the current market price for Electricity) and the payment of any reasonable costs incurred as a result of such termination including the payment of ???? ??? for the balance of the Term (based upon the anticipated usage), any indemnification or confidentiality obligation of either party which has arisen hereunder and any other obligation hereunder which by its nature survives the termination of this Agreement.

**9. Agreement to Indemnify:**

Subject to the limitations set forth herein, each party shall defend, indemnify and hold harmless the other party, its affiliates and their respective employees, officers, or agents from any and all claims, liability and expense arising out of any bodily injury, death or damage to property (other than bodily injury, death or damage to property proximately caused by the negligence or intentional misconduct of any such other party or its servants or employees ???????? ?? ??? ?????? of Services hereunder, except that each party shall be responsible for all claims of its own employees, ?? ?????? ??????? under any workmen's compensation law or similar law.

12/21/2007 12:55 FAX 9145923482          XAND                                    ☒012
    11/10/2005 10:43 FAX -12127526638                              + Contracts        ☒004/007
Nov 09 05 03:15p     RON SPECHLER              201-767-2005              P.4

**10. Limitation of Liability:**

LIABILITY IS LIMITED TO DIRECT ACTUAL DAMAGES AS THE SOLE AND EXCLUSIVE REMEDY AND ALL OTHER REMEDIES OR DAMAGES ARE EXPRESSLY WAIVED. IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER FOR ANY INCIDENTAL, CONSEQUENTIAL, OR PUNITIVE DAMAGES, LOST PROFITS OR OTHER BUSINESS INTERRUPTION DAMAGES. EACH PARTY AGREES THAT IT HAS A DUTY TO MITIGATE DAMAGES AND COVENANTS THAT IT WILL USE COMMERCIALLY REASONABLE EFFORTS TO MINIMIZE ANY DAMAGES IT MAY INCUR AS A RESULT OF THE OTHER PARTY'S PERFORMANCE OR NON-PERFORMANCE OF THIS AGREEMENT.

**11. Applicable Law:**

As to all matters of construction and interpretation, this Agreement shall be construed, interpreted, and governed under and by the laws of the State of New York, without regard to its choice of law provisions.

**12. Waiver:**

No waiver by either party of any default or defaults by the other party under this Agreement shall operate as a waiver of any future default or defaults, whether of a like or different character or nature.

**13. Severability:**

The various provisions of this Agreement are severable. The invalidity, illegality or unenforceability of any portion or provision shall not affect the validity, legality or enforceability of any other portion or provision of this Agreement.

**14. Notices and Correspondences:**

Any notice or other document to be given or served hereunder or under any document or instrument executed pursuant hereto shall be in writing and shall be delivered to the appropriate address specified below. Notice sent by facsimile or other electronic means shall be deemed to have been received by the other party on the business day on which it was transmitted or such earlier time as is confirmed by the receiving party. Notice delivered by courier shall be deemed to have been received on the business day after it was sent or such earlier time as is confirmed by the receiving party. Notice delivered by mail shall be deemed to have been received at the end of the third business day after the date of mailing by prepaid first class mail, except that when there is a strike affecting delivery of mail, all notices shall be delivered by courier or by facsimile or other electronic means.

Strategic Energy                          Xand Corporation
Attn: Customer Service Manager            Attn: Lee B Weinstein
Two Gateway Center                        11 Skyline Dr
Pittsburgh, PA 15222                      Hawthorne, NY 10532

Phone: (412) 394-5800                     Phone:  (914) 592-8282
Fax:   (412) 644-3211                     Fax:    (914) 592-3482
Monday through Friday from
8:00AM through 5:00PM Eastern Time

**15. Confidentiality:**

Except when disclosure may be required by law or a party has obtained written consent from the other party, each party agrees that it shall not disclose to a third party (other than the party's employees, lenders, counsel, consultants, agents or accountants who have agreed to keep such terms confidential) and will maintain in strict confidence the terms, conditions and pricing information set forth and made a part of this Agreement. Strategic Energy agrees that such confidential treatment shall extend to Buyer's usage and consumption data which is not otherwise in the public domain and which will not be disclosed except as appropriate to carry out the terms of this Agreement or as requested in writing by the Buyer. The parties shall be entitled to all remedies available at law or in equity to enforce, or seek relief in connection with this confidentiality obligation. This provision shall survive the termination of this Agreement for a period of two (2) years.

**16. Representations and Warranties:**

As a material inducement to entering into this Agreement, each party, with respect to itself, hereby represents and warrants to the other party as follows:

(a) it is duly organized, validly existing and in good standing under the laws of the jurisdiction of its formation and is qualified to conduct its business in those jurisdictions necessary to perform this Agreement;

(b) the execution and delivery of this Agreement are within its powers, have been duly authorized by all necessary actions and/or board approvals, and do not violate any of the terms or conditions in its governing documents or any contract to which it is a party or any law applicable to it;

(c) as of the date of Service commencement hereunder, it shall have all regulatory authorizations necessary for it to legally perform its operations;

11/9/2006 10:51:07 AM                                RH                      00131657-0001c
(License Version Date: 11/04/2005)

12

12/21/2007 12:55 FAX 9145923482          XAND                                    ☑013

11/10/2005 10:44 FAX -12127526636                          + Contracts      ☑005/007

Nov 09 05 03:15p    RON SPECHLER                    201-767-2005        P. 5

(d) this Agreement constitutes a legal, valid and binding obligation of such party enforceable against it in accordance with its terms, subject to bankruptcy, insolvency, reorganization, and other laws affecting creditors' rights generally and with regard to equitable remedies, subject to the discretion of the court before which proceedings to obtain same may be pending;

(e) there are no bankruptcy, insolvency, reorganization, receivership or other similar proceedings pending or being contemplated by it or, to its knowledge, threatened against it;

(f) the Facility(ies) to be provided the Services described herein are not contractually bound by another agreement for Electricity services that will overlap with the Term stated in Facility List; and

(g) If it is a property management company acting on behalf of the owner of the Facility(ies), it has the authority to execute and bind the Facility(ies) to this Agreement for the Term stated in the Facility List and that the term of its property management agreement with the owner of the Facility(ies) is equal to or greater than the Term of this Agreement.

Each party covenants that it shall cause its respective representations and warranties to remain true and correct throughout the Term of this Agreement.

**17. Parties, Assignment:**

This Agreement shall inure to and benefit the parties hereto and their permitted successors and assigns. Neither party may assign this Agreement without the prior written consent of the other party, which consent shall not be unreasonably withheld. Notwithstanding the above, Strategic Energy may, without the consent of Buyer, assign this Agreement and its rights and obligations hereunder for the limited purpose of securing credit and financing. Further, either party may, without the need for consent from the other party transfer or assign this Agreement (a) to an Affiliate of such party provided that all the persons obligated to fulfill the assigning party's obligations under the Agreement after the assignment have substantially equivalent financial capability to that of all other persons obligated to fulfill the assigning party's obligation under the Agreement before the assignment, or (b) to any person or entity succeeding to all or substantially all of the assets of such party; provided, however, that any such assignee shall agree to be bound by the terms and conditions hereof. As used herein, "Affiliate" shall mean with respect to any person, any other person (other than an individual) that, directly or indirectly, through one or more intermediaries, controls, or is controlled by, or is under common control with, such person. For purposes of the foregoing definitions, "control" means the direct or indirect ownership of more than fifty percent (50%) of the outstanding capital stock or other equity interests having ordinary voting power.

**18. Force Majeure:**

To the extent another party is prevented by Force Majeure from carrying out, in whole or part, its obligations under this Agreement and such party (the "Claiming Party") gives notice and details of the Force Majeure to the other party as soon as practicable, then, the Claiming Party shall be excused from the performance of its obligations. The Claiming Party shall remedy the Force Majeure with all reasonable dispatch. The non-Claiming Party shall not be required to perform or resume performance of its obligations to the Claiming Party corresponding to the obligations of the Claiming Party excused by Force Majeure.

**19. Definitions:**

As used herein, unless the context clearly indicates otherwise, the following terms shall have the meaning set forth below:

"**Ancillary Services**"

means wholesale electric services and products required to facilitate delivery of Energy to the Host Utility.

"**Capacity**"

means the ability to provide Energy as needed, as measured in kilowatts (kW) or megawatts (MW).

"**Distribution**"

means all delivery service for Energy, Capacity and applicable Ancillary Services provided by the Host Utility, excluding Transmission.

"**Electricity**"

means the combination of Energy, Capacity, Transmission, and Ancillary Services which are provided by Strategic Energy under this Agreement. Strategic Energy will deliver the Electricity to the Host Utility for delivery to Buyer's Facilities.

"**Energy**"

means electrical energy, as measured in kilowatt hours (kWh) or megawatt hours (MWh).

"**Facility (ies)**"

means the plants, works, operations and/or facilities for which Buyer has the authority to purchase Electricity under this Agreement and which are set forth on the "Facility List" attached to this Agreement as Exhibit "A", as may be amended from time to time.

11/9/2005 10:51:07 AM                        RH                          00131557-0001c

Contract Version Date: 11/04/2005

"Firm"

means that parties may only suspend performance hereunder to the extent that such performance is prevented for reasons of Force Majeure.

"Force Majeure"

means any "Act of God" or other unexpected and disruptive event beyond the reasonable control of either party that interferes with either party's ability to perform its obligations under this Agreement, except for the obligation to pay monies due.

"Host Utility"

means any investor-owned utility, municipal utility, public utility, or other provider of electric lines whose system is directly interconnected with and which provides Distribution to Buyer's Facilities.

"Locational Based Marginal Price ("LBMP")"

"Locational Based Marginal Price ("LBMP")" means the hourly integrated market clearing marginal price for Energy at the location the Energy is delivered or received as defined by the New York ISO.

"New York ISO"

means the New York Independent System Operator.

"Off-Peak"

means Monday through Sunday hours ending ("HE") 0100 through HE 0700 and HE 2400 and Saturday through Sunday HE 0800 through HE 2300. Off Peak also includes NERC Holidays HE 0100 through HE 2400. HE shall be at Eastern prevailing time.

"On-Peak"

means Monday through Friday HE 0800 through HE 2300, excluding NERC Holidays. HE shall be at Eastern prevailing time.

"Point(s) of Delivery"

shall mean the point(s) where Energy is delivered to the Host Utility. Title to, control and possession of, Electricity shall pass from Strategic Energy to Buyer at the Point of Delivery.

"Transmission"

means all delivery services for Energy, Capacity and applicable Ancillary Services, at any voltage level, which are regulated by the Federal Energy Regulatory Commission ("FERC").

20. Entire Agreement:

This Agreement and any Exhibits contain the entire understanding of the parties with respect to the subject matter contained herein. There are no promises, covenants or understanding other than those expressly set forth herein. This Agreement may only be amended by a written instrument executed by both parties. Any modification to this Agreement, including any Exhibit, must be accepted and agreed to in writing by Buyer.

21. Counterparts:

This Agreement may be executed in one or more than one counterpart, including by facsimile, and each executed counterpart shall be considered an original, all of which together shall constitute one and the same Agreement.

IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed.

STRATEGIC ENERGY, L.C.                              Xand Corporation

By _____            By _____

Print Name: Andrew Washburn            LEE S. WENSTEIN

Title: Chief Financial Officer         Title: PRESIDENT

Date: NOV 16 2005                      Date: 11-09-05

☑015

12/21/2007 12:56 FAX 9145923482          XAND

11/10/2005 10:45 FAX  12127528836                              • Contracts        ☑007/007

Nov 09 05 03:16p    RON SPECHLER              201-767-2005        P.7
11/08/05  WED 14:38 FAX

**Strategic Energy®**

**PowerSupply Coordination® Service Agreement**
**New York**
**LBMP Product**

Exhibit "A"

FACILITY LIST

This Facility List shall confirm the transaction agreed to on **11-09-05** 2005 between Xand Corporation ("Buyer") and Strategic Energy L.L.C. ("Strategic Energy") regarding the purchase of Services under the following terms and conditions:

1. Facilities.

| Facility Location | Account Meter # (ESI ID#) | Host Utility | Rate Class | Estimated Historical Annual Usage (kWh) | Maximum Peak Demand (kW) |
|---|---|---|---|---|---|
| 11 Skyline Drive Dtl | 655001109310010 | CONE | 610 | 2,843,200 | 513 |

2.    Term, per Section 2:

    Period of Months: _____ 12

    Meter Read Start Date: _____ 12/2005

This Facilities List is being provided pursuant to and in accordance with the PowerSupply Coordination Services Agreement dated _____ between Buyer and Strategic Energy, and constitutes part of and is subject to the terms and provisions of such Agreement. Terms used but not defined herein shall have the meanings ascribed to them in the PowerSupply Coordination Services Agreement.

This Facilities List may be executed in one or more counterparts, including by facsimile, and each executed counterpart shall be considered an original, all of which together shall constitute one and the same Agreement.

Strategic Energy L.L.C.                     Xand Corporation

By: _____              By: _____

Print Name: Andrew Washburn               Print Name: LEE S. WEINSTEIN

Title: Chief Financial Officer             Title: PRESIDENT

Date: _____ NOV 1 6 2005                  Date: 11-09-05

EXHIBIT 'B'
Arthur Morrison's Reply Declaration and also in Further Support
of the Plaintiff's Motion-in-Chief to Remand,

Arthur Morrison
Bar Code (AM5678)
Office and PO Address
11 Skyline Drive
Hawthorne, New York 10532
(T) 914-592-8282
(F) 914-592-3482
Attorney for Plaintiff
Xand Corporation

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

XAND CORPORATION,                          Case# 08-Civ. 0513(SCR)

                      Plaintiff,                  Judge Robinson

        -Against-                              Plaintiff's Reply in
                                           Support of Motion to Remand

STRATEGIC ENERGY, LLC

                  Defendant.

-----------------------------------------------------------x
State of New York    )
                ) ss:
County of Westchester)

        Xand Corporation ("Plaintiff") by its attorney Arthur Morrison

("Morrison") respectfully submits this Reply Declaration in further support

("Reply") of the motion to remand ("the Motion").

## I.  Preliminary Statement

        Plaintiff seeks to remand this case to state court because there is an absence of

Federal Subject Matter Jurisdiction.

Defendant has removed to this Court a pending action in the Supreme Court, Westchester County under 28 U.S.C. 1441(a).

**Change of Circumstances Mandates Rule 17 of the Federal Rules**

Rule 17(1) of the Federal Rules provides that " An action must be prosecuted in the name of the real party in interest."

Plaintiff has provided overwhelming documentary evidence that Strategic is not the real party in interest in this case after April 2, 2008 negating its Removal Application of February 2008, filed with the Clerk of this Court two months earlier.

In its Motion to Remand, plaintiff provided documentary evidence mooting the Defendant's Notice of Removal and its supporting affidavit by Carl W. Boyd sworn February ___, 2008  ("Boyd Affidavit" and/or "Affidavit Supporting Removal").

Mr. Boyd's affidavit asserted that the defendant Strategic Energy LLC's ("Strategic's") " …employees and any independent contractors associated with Strategic take their direction, management and control from corporate headquarters in Pittsburgh functioning as the principal place of business for Strategic."(Emphasis supplied)

A material change in circumstance did occur on April 2, 2008 when Great Plains Energy, Inc. ((NYSE:GXP) ("Great Plains") which had owned Strategic, sold Strategic for 300 Million Dollars  to Direct Energy Service LLC ("Direct Energy") located in Toronto, Canada.  (Emphasis supplied)

Direct Energy is a subsidiary of Centrica PLC (LSE: CAN), (Centrica) PLC located in the United Kingdom and said to be one of the word's largest integrated energy companies. (Emphasis supplied)

**ARGUMENT:**
**(1) Rule 17 (3)  Need for Joinder of the Real Party in Interest.**

"The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest."

Strategic's Opposition to the plaintiff's motion to remand does not address Rule 17(1) of the Federal Rules provides that " An action must be prosecuted in the name of the real party in interest." or Rule 17(3) of the Federal Rules involving the issue of joinder of the real party in interest, raised by Plaintiff in its Motion in Chief, because in order to establish diversity the Court must have before it the true parties in a case, and further if not named originally, then Rule 17(3) of the Federal Rules provides that there must be a reasonable process to join, ratify or substitute them into the action.

Firstly, the documentary evidence provided the Court in the motion in chief, is not disputed by Strategic counsel's opposition to remand, namely the sale of Strategic in April 2, 2008 by Great Plains Energy for 300 Million Dollars to Centrica PLC located in the UK to be operated by Centrica PLC's subsidiary, to Direct Energy Service LLC which is located in Toronto, Canada or further, such sale in April, 2008 totally nullifies Strategic's February, 2008 Removal Application, by failing to satisfy the complete diversity requirements determined by Statute, 28 U.S.C. 1332 (c)(i). Declarant's moving papers detail this issue, including a Memorandum and the arguments need not be repeated hereat.

As no challenge is made by Strategic's counsel to Exhibits "A","B" and "C" annexed to the Notice of Motion to remand, the documentary evidence of the sale of Strategic on April 2, 2008, Strategic's headquarters in Pittsburgh, Pa is no longer relevant

as an exclusive standard for diversity requirements as determined by Statute, 28 U.S.C. 1332 (c)(i).

Plaintiff's declaration and Memorandum, heretofore filed with the Court respectfully submits that diversity for Federal Jurisdictional Purposes is determined by Statute, 28 U.S.C. 1332(c) (i) which provides that a corporation is "a citizen of any state by which it has been incorporated and of the state where it has its principal place of business"

If in fact Great Plains Energy, Inc. which previously owned Strategic sold Strategic on April 2, 2008 for 300 Million Dollars to Direct Energy Service LLC located in Toronto, Canada, Direct Energy being a subsidiary of Centrica PLC located in the United Kingdom, then this new April 2, 2008 dynamic as to the "real parties in interest" impacts immediately Rule 17(1) of the Federal Rules which provides that " An action must be prosecuted in the name of the real party in interest." in this case and thereby irrevocably cancels the factual basis for diversity asserted by Strategic's original February 2008 set of facts presented in its Notice of Removal to Judge Robinson.

At this point in time, August, 2008 Rule 17(3) of the Federal Rules must be taken into consideration by Justice Robinson as by statute, there must be a reasonable process to join, ratify or substitute the real parties in interest into the action, namely

(i) Direct Energy Service LLC located in Toronto, Canada, (Direct Energy being a subsidiary of Centrica PLC) and

(ii) Centric PLC itself located in the United Kingdom.

As diversity is governed by statute, 28 U.S.C. 1332(c)(i) which provides that a corporation is "a citizen of any state by which it has been incorporated and of the state

where it has its principal place of business both Direct Energy Service LLC located in

Toronto, Canada and its parent, Centrica PLC located in the United Kingdom the real

parties in interest must be joined as the real parties in interest and then diversity

determined.

**(2) Strategic Being Sold has no Further Standing in this Case**

Plaintiff's motion in chief provided the case law that Strategic lacked standing

after April 2, 2008, once Strategic was sold for 300 Million Dollars and replaced by both

Direct Energy Service LLC located in Toronto, Canada and its parent, Centrica PLC

located in the United Kingdom; once sold Strategic was bound by Rule 17(1) of the

Federal Rules which provides that " An action must be prosecuted in the name of the real

party in interest." Not being the real party in interest after April 2, 2008, Strategic was  no

longer entitled to have the Court decide the merits of the dispute or of the particular

issues.

Strategic's Opposition did not provide any case law authority to challenge this

postulate and it is respectfully submitted, it lacks standing to continue as a party in this

case after April 2, 2008.

## Conclusion

Citizenship for diversity purposes is determined by statute, 28 U.S.C. 1332(c)(i)

which provides that a corporation is "a citizen of any state by which it has been

incorporated and of the state where it has its principal place of business".

Before the Court can reach the issue of the applicability of Strategic's Citizenship

for diversity purposes as determined by statute, 28 U.S.C. 1332(c)(i), Strategic in August,

2008 must make out a prima facie showing to ensure that it has Standing to met the

challenge presented by Rule 17(1) of the Federal Rules which provides that " An action must be prosecuted in the name of the real party in interest."

Additionally, Strategic's Opposition to the plaintiff's motion to remand does not address Rule 17(3) of the Federal Rules, where by statute, there must be a reasonable process to join, ratify or substitute the real parties in interest into the action, namely (i) Direct Energy Service LLC located in Toronto, Canada, (Direct Energy being a subsidiary of Centrica PLC) and (ii) Centric PLC itself located in the United Kingdom

In order to establish diversity, and pass upon the merits of the motion to remand the Court must have before it the true parties in a case, and further if not named originally, then Rule 17(3) of the Federal Rules provides that there must be a reasonable process to join, ratify or substitute them into the action. That process has not yet occurred.

Plaintiff respectfully submits, that the Removal Application cannot proceed, in the absence of (i) Direct Energy Service LLC located in Toronto, Canada and (ii) Direct's parent, Centrica PLC located in the United Kingdom.

Plaintiff also respectfully submits that Strategic's counsel must provide a current Rule 7.1 Statement executed by defendant's counsel to replace the one filed on January 18, 2008. The April 2, 2008 sale mandates the need for such Rule 7.1 Statement Amendment

Plaintiff also respectfully submits that Strategic's counsel must provide a representation to the Court if Strategic transferred customer files after April 2, 2008 based upon the actions of its parent, Great Plains Energy, Inc. of Kansas City, Mo. in selling the assets of Strategic for 300 Million Dollars in April 2008.

RESPECTFULLY SUBMITTED,

Dated: Hawthorne, New York          /s/    Arthur Morrison
       August 15, 2008


                                       Arthur Morrison
                                       Attorney for Plaintiff
                                       Office and PO Address
                                       11 Skyline Drive
                                       Hawthorne, New York 10532
                                       (T) 914-592-8282
                                       (F) 914-592-3482

## DECLARATION OF SERVICE

Arthur Morrison pursuant to 28 U.S.C. § 1746, declares under penalty of perjury as follows:

That on August 15, 2008 I caused the annexed Notice of Motion to be served on:

Thomas M. Bona, P.C.
Attorney for Defendant
Office and P.O. Address
123 Main Street
White Plains, New York 10601
(T) 914-428-1438
(F) 914-428-1313

by depositing a true and correct copy thereof, properly enclosed in FedEx Priority Overnight wrapper, directed to said law firm at the address within the State designated by them for that purpose and/or in accordance with the Southern District's Rules **and also** faxed a copy to 914-428-1413.

RESPECTFULLY SUBMITTED,

Dated: Hawthorne, New York        /s/    Arthur Morrison
      August 15, 2008

# MEMORANDUM
# FAX TRANSMISSION & Priority Overnight

**Arthur Morrison**
**Attorney for Plaintiff**
**Office and PO Address**
**11 Skyline Drive**
**Hawthorne, New York 10532**
**(T) 914-592-8282**
**(F) 914-592-3482**

To:

Thomas M. Bona, P.C.
Attorney for Defendant
Office and P.O. Address
123 Main Street
White Plains, New York 10601
(T) 914-428-1438
(F) 914-428-1313

Hawthorne, New York

August 15, 2008

Re:

Reply Declaration

Enclosed please find the Reply Declaration of the Plaintiff.

9

Arthur Morrison
Bar Code (AM5678)
Office and PO Address
11 Skyline Drive
Hawthorne, New York 10532
(T) 914-592-8282
(F) 914-592-3482
Attorney for Plaintiff
Xand Corporation

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

 XAND CORPORATION,                                     Case# 08-Civ. 0513(SCR)

                            Plaintiff,              Judge Robinson

             -Against-                  Plaintiff's Declaration &
                                         Memorandum in
                                Opposition to Motion to Dismiss

STRATEGIC ENERGY, LLC

                            Defendant.

-------------------------------------------------------------x
State of New York    )
                  ) ss:
County of Westchester)

          Xand Corporation ("Plaintiff") by its attorney Arthur Morrison

("Morrison") respectfully submits Plaintiff's Declaration & Memorandum  in

Opposition ("Opposition") to Motion to Dismiss ("the Dismissal Motion").

**Preliminary Statement**
**Failure to Join a Required Party**

      1.     Unexplained by the defendant Strategic, in proceedings to (a) remove this

case from the Supreme Court, Westchester County and (b) the subsequent application to

Remand,  why Strategic has not joined required parties.

2.     Under Rule 19 (c) Strategic, aware of the fact that (i) Direct Energy Service LLC located in Toronto, Canada, (Direct Energy being a subsidiary of Centrica PLC) and (ii) Centric PLC itself located in the United Kingdom are respectively the successors since April, 2008 of  Strategic by virtue of a 300 Million Dollar sale, is obligated to provide to this Court, a Statement of Reasons for Omitting a Party.

3.     It appears from the Defendant's Opposition to the Motion to Remand that Strategic's counsel did not deal with the requirements of Rule 19(a) that if Strategic is taking the position before Judge Robinson that Direct Energy Service LLC located in Toronto, Canada, (Direct Energy being a subsidiary of Centrica PLC) and (ii) Centric PLC itself located in the United Kingdom need not  be named and made a party under Rule 19(a), then Strategic must include such statement in accordance with Rule 19(c) and provide reasons to the Court therefor.

**Does the court have  jurisdiction over the joined party?**

4.     Once Strategic's counsel deals with Rule 19(c ) the Court can rule on jurisdiction and  diversity requirements when it is urged by defendant Strategic that the basis of original jurisdiction is diversity.

5.     At this point, plaintiff  will restate its position, provided earlier in its Motion to Remand,  that it seeks to remand this case to state court because there is an absence of Federal Subject Matter Jurisdiction. Defendant had removed to this Court a pending action in the Supreme Court, Westchester County under 28 U.S.C. 1441(a).

**Change of Circumstances Mandates Rule 17 of the Federal Rules**

6.     Rule 17(1) of the Federal Rules provides that " An action must be prosecuted in the name of the real party in interest."

7.      In its Motion to Remand, Plaintiff has provided overwhelming documentary evidence that Strategic is not the real party in interest in this case after April 2, 2008 negating its Removal Application of February 2008, filed with the Clerk of this Court two months earlier.

8.      In its Motion to Remand, plaintiff provided documentary evidence mooting the Defendant's Notice of Removal and its supporting affidavit by Carl W. Boyd sworn February ___, 2008  ("Boyd Affidavit" and/or "Affidavit Supporting Removal").

9.      Mr. Boyd's affidavit asserted that the defendant Strategic Energy LLC's ("Strategic's") " …employees and any independent contractors associated with Strategic take their direction, management and control from corporate headquarters in Pittsburgh functioning as the principal place of business for Strategic."(Emphasis supplied)

10.      A material change in circumstance did occur on April 2, 2008 when Great Plains Energy, Inc. ((NYSE:GXP) ("Great Plains") which had owned Strategic, sold Strategic for 300 Million Dollars  to Direct Energy Service LLC ("Direct Energy") located in Toronto, Canada.  (Emphasis supplied)

11.      Direct Energy is a subsidiary of Centrica PLC (LSE: CAN), (Centrica) PLC located in the United Kingdom and said to be one of the word's largest integrated energy companies. (Emphasis supplied)

**ARGUMENT:**
**(1) Rule 17 (3)  Need for Joinder of the Real Party in Interest.**

> "The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest."

3

12.    Strategic's motion to dismiss does not address Rule 17(1) of the Federal Rules provides that " An action must be prosecuted in the name of the real party in interest." or Rule 17(3) of the Federal Rules involving the issue of joinder of the real party in interest, raised by Plaintiff in its Motion in Chief, because in order to establish diversity the Court must have before it the true parties in a case, and further if not named originally, then Rule 17(3) of the Federal Rules provides that there must be a reasonable process to join, ratify or substitute them into the action.

13.    Declarant repeats the arguments made in Support of the Motion to remand, the documentary evidence provided the Court is not disputed by Strategic counsel's, namely the sale of Strategic in April 2, 2008 by Great Plains Energy for 300 Million Dollars to Centrica PLC located in the UK to be operated by Centrica PLC's subsidiary, to Direct Energy Service LLC which is located in Toronto, Canada or further, such sale in April, 2008 totally nullifies Strategic's February, 2008 Removal Application, by failing to satisfy the complete diversity requirements determined by Statute, 28 U.S.C. 1332 (c)(i).

**Strategic Being Sold has no Further Standing in this Case**

14.    Nor has Strategic offered any opposition to the case law that Strategic lacked standing after April 2, 2008 as a real party in interest, once Strategic was sold for 300 Million Dollars and replaced by both Direct Energy Service LLC located in Toronto, Canada and its parent, Centrica PLC located in the United Kingdom.

15.    Nor has Strategic provided persuasive authority to counter the fact that once sold, Strategic was bound by Rule 17(1) of the Federal Rules which provides that " An action must be prosecuted in the name of the real party in interest." Not being the real

4

party in interest after April 2, 2008, Strategic was  no longer entitled to have the Court decide the merits of the dispute or of the particular issues.

### Conclusion

16.    Strategic lacks standing to continue as a party in this case after April 2, 2008.

17.    Strategic's does not address Rule 17(3) of the Federal Rules, where by statute, there must be a reasonable process to join, ratify or substitute the real parties in interest into the action, namely (i) Direct Energy Service LLC located in Toronto, Canada, (Direct Energy being a subsidiary of Centrica PLC) and (ii) Centric PLC itself located in the United Kingdom

18.    Plaintiff also respectfully submits that Strategic's counsel must provide a current Rule 7.1 Statement executed by defendant's counsel to replace the one filed on January 18, 2008. The April 2, 2008 sale mandates the need for such Rule 7.1 Statement Amendment

RESPECTFULLY SUBMITTED,

Dated: Hawthorne, New York          /s/    Arthur Morrison
          August 26, 2008


Arthur Morrison
Attorney for Plaintiff
Office and PO Address
11 Skyline Drive
Hawthorne, New York 10532
(T) 914-592-8282
(F) 914-592-3482

5

<u>Declaration of Service</u>

Arthur Morrison, pursuant to 28 U.S.C. Section 1746 declares under the penalty of perjury as follows:

That on August 26, 2008 I caused the annexed Affidavit of Lee S. Weinstein, Declaration of Arthur Morrison and Exhibits to be served on:

Thomas M. Bona, P.c.
Attorney for Defendant
Office and P.O. Address
123 Main Street
White Plains, New York 10601
Tel 914-428-1438
Fax 914-428-1313

By depositing a true copy thereof, properly enclosed in a FedEx wrapper, directed to said law firm at the above address in the State of New York, designated by them for that purpose and in accordance with the Southern District's Rules.

Respectfully submitted,

Dated: Hawthorne, New York                    /s/ Arthur Morrison
           August 26, 2008